Loni F. DeLand (0862)
Attorney for Defendant
43 East 400 South
Salt Lake City, UT 84111
Telephone: (801) 364-1333
Fax: (801) 364-3232

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | SENTENCING MEMORANDUM |
| vs. | : | |
| JAMES ROWELL, | : | Case No.    1:06 CR 67 TC |
| Defendant. | : | Honorable Tena Campbell |

James Rowell, through his attorney of record, Loni F. DeLand, hereby submits the following sentencing memorandum.

**STATEMENT OF CASE**

On August 9, 2006, Mr. Rowell was charged in a one count Indictment with coercion and enticement for illegal sexual activity, in violation of 18 U.S.C. §2422(b). At his Initial Appearance the Government did not seek detention. Magistrate Judge Paul M. Warner issued an order setting conditions of release.

On February 28, 2007, a Superseding Felony Information was filed against Mr. Rowell charging him with one count of use of interstate facility to transmit information about a minor, in violation of 18 U.S.C. §2425. Count I is punishable by up to five years of imprisonment, a fine of $250,000, and a term of supervised release of up to life. On February 28, 2007, the court

accepted Mr. Rowell's guilty plea to count I of the Superseding Felony Information and his Statement in Advance of Guilty Plea was executed and filed by the court. The court determined that he should remain on release under the previous set conditions of release.

On April 13, 2007, a warrant was executed for Mr. Rowell's arrest based on an alleged violation of supervised release. Mr. Rowell is currently scheduled for sentencing on June 27, 2007 at 2:30 p.m.

The Presentence Report (PSR) determined that Mr. Rowell's base offense level was 26 based on U.S.S.G. § 2G1.3. PSR at ¶16. The probation department added two levels pursuant to U.S.S.G. § 2G1.3(a). *Id*. at ¶17. A three level reduction was calculated for full acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. *Id*. at ¶22. The probation department calculated a criminal history score of one which yields a criminal history category of I. *Id.* at ¶30. Mr. Rowell's sentencing guideline range, based on the probation departments calculations, is 46 to 57 months. Pursuant to the plea agreement, the government agrees to move for a reduction pursuant to U.S.S.G. § 5K1.1 contingent on whether information already provided by Mr. Rowell is useful and corroborated by law enforcement.

    I.    **THIS COURT HAS DISCRETION TO REDUCE MR. ROWELL'S SENTENCE BASED ON 18 U.S.C. SECTION 3553 FACTORS.**

The main question post-Booker, is how do courts impose sentences that address the spirit and intent of *Booker*, while at the same time giving sentencing judges sufficient discretion to impose "reasonable" sentences. Two lines of post-*Booker* sentencing analysis have emerged. The first suggests that a sentence within the calculated Guideline range is presumptively reasonable and the sentencing court should give considerable weight to the Sentencing

Guidelines. *United States v. Green,* 436 F.3d 449, 457 (4th Cir.2006); *United States v. Alonzo,* 435 F.3d 551, 555 (5th Cir.2006); *United States v. Williams,* 436 F.3d 706, 708 (6th Cir.2006); *United States v. Mykytiuk,* 415 F.3d 606, 607 (7thCir. 2005); *United States v. Lincoln,* 413 F.3d 716 (8th Cir.2005); *United States v. Kristi*, 437 F.3d 1050 (10th Cir. 2006). The second view suggests that the Guidelines are but one factor of many, including those outline in 18 U.S.C. § 3553, for the court to consider in imposing sentence, and that sentencing judges have considerable discretion in imposing sentences. *United States v. Jimenez-Beltre,* 440 F.3d 514 (1st Cir.2006) (en banc); *United States v. Crosby,* 397 F.3d 103 (2d Cir.2005); *United States v. Cooper,* 437 F.3d 324 (3d Cir.2006); *United States v. Cantrell,* 433 F.3d 1269 (9th Cir.2006).

18 U.S.C. § 3553 sets forth factors for the court to consider when deciding what a reasonable sentence should be:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
>> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>> (2) the need for the sentence imposed--
>>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>> (B) to afford adequate deterrence to criminal conduct;
>>> (C) to protect the public from further crimes of the defendant; and
>>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>> (3) the kinds of sentences available;
>> (4) the kinds of sentence and the sentencing range established for--
>>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines--
>>> (i) issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such

>guidelines by act of Congress (regardless of whether such amendments
>have yet to be incorporated by the Sentencing Commission into
>amendments issued under section 994(p) of title 28); and
>(ii) that, except as provided in section 3742(g), are in effect on the date the
>defendant is sentenced.

18 U.S.C. § 3553.

    A.  <u>Nature of Circumstances of Offense and History and Characteristics of Accused</u>

Mr. Rowell is presently thirty-four years old. He and his brother Jordan, were adopted by James David Rowell and Geralynn Patricia Baldwin. They were raised in Carmichael, California until Mr. Rowell was fourteen years old. His father got a job in Michigan and the family moved with him. Mr. Rowell obtained his High School Diploma in Michigan. When he was eighteen years old his mother died. The next year he moved to Poland to serve an ecclesiastical mission for his church.

After completing his mission he moved to Utah where he had many friends he met while serving his mission. He stayed in Utah for a short while before going back to Michigan to help his father. In April 1995, his father married Nancy Bradshaw. She brought three of her own children into the marriage, who James Rowell Sr. adopted. Mr. Rowell's father and stepmother later adopted two more children and they currently reside in Logan, Utah. While Mr. Rowell was in Michigan he married his High School sweetheart. They moved to Utah in 1996 and Mr. Rowell has lived in Utah ever since. The couple subsequently divorced in 1998.

He has one child, Mya Breanne Larkin Rowell, who is almost two years old. Mya lives with her mother, Elizabeth Larkin, in Utah County. Mr. Rowell helps support his daughter by paying her mother child support in the amount of $550 a month, and visited her weekly up until

4

his incarceration in April. Mya's mother relies on Mr. Rowell's child support payment to pay her rent.

Mr. Rowell has a solid work history. He received a Real Estate license in Michigan in 1994 and in Utah in 1996. In 1997, he began working as a real estate agent in Brigham City while also working a part-time job at Atoliv in Box Elder County. He also worked as a Mortgage Broker part-time and in April 2006 stayed in the same position on a full-time basis. He worked for Axcess Mortgage for five years and has been with Imax Mortgage since April 2006. On the days he cares for his daughter he often works from home.

After entering a guilty plea in this case, Mr. Rowell submitted to a psycho-sexual evaluation. Dr. Peter Byrne concluded in his report that Mr. Rowell was within the LOW-MODERATE range. He also encouraged Mr. Rowell to attend therapy session while awaiting his sentence. Mr Rowell followed that advice and set up appointments, however he was not able to attend the sessions due to his incarceration. Dr. Byrne also recommended individual treatment sessions while on probation. Mr. Rowell is willing to participate in and complete any treatment recommended by Dr. Byrne.

Between February and July 2006 Mr. Rowell, using the screen name "odouls2222" engaged in internet conversations over a Yahoo! chat room with "dancebabee4u" the screen name for an undercover officer using the persona of a twelve year old girl. On February 9, 2006, Mr. Rowell offered to give "dancebabee4u" a motorcycle ride. However, no follow-up conversation occurred. Then on July 18, 2006, the undercover agent initiated a conversation with Mr. Rowell who then again offered to give her a motorcycle ride and back to his house. Engaging in sexual activities were discussed and Mr. Rowell said he would bring condoms.

5

They arranged to meet at 11:00 p.m. at skater park. At approximately 11:25 p.m. officers observed a man exit a black vehicle at the park. At approximately 11:30 p.m. they arrested Mr. Rowell. Mr. Rowell did not possess any condoms at the time of arrest. A subsequent search of his computer revealed no incriminating evidence.

> B. <u>The Need for the Sentence Imposed</u>

In evaluating the need for the sentence imposed, a sentencing court should look at the seriousness of the offense, and impose just punishment for the offense mindful that a sentence must also promote respect for the law. Mr. Rowell's participation in this offense has been outlined above. The need for a long sentence here seems unnecessary given Mr. Rowell's present attitude and background. The people in the best position to know Mr. Rowell – his family and friends – all speak highly of his character and believe he will not commit future offense of any kind.

Mr. Rowell has engaged in internet instant chat conversations for a long time. He has met many friends, significant others and business clients through this manner. He also used internet instant messaging to facilitate his business by communicating with title companies, processors, and operators.

Mr. Rowell once met a woman in a chat room and subsequently engaged in a romantic relationship with her. The woman informed him at the time that she was twenty years old. However, after dating her for six months she informed him that she was really sixteen years old. As soon as he learned the truth he broke the relationship off and declined to continue any friendship with the girl.

C. The Kinds of Sentences Available

The court has discretion to impose a reasonable sentence. Mr. Rowell contends that the initial starting point under the advisory Guidelines is a 24, criminal history category I. The PSR is recommending a 3 point reduction for acceptance of responsibility, which results in a base advisory Guideline sentencing range of 47 to 53 months. Based solely on the section 3553 factors outlined above, the court has discretion to impose a sentence lower than the advisory Guideline range. Mr. Rowell asks the court to impose a sentence below that range based on the section 3553 factors, or alternatively, based on the variances outlined below.

II. **THIS COURT MAY GRANT A VARIANCE BECAUSE MR. ROWELL'S BEHAVIOR WAS OUTSIDE THE HEARTLAND OF U.S.S.G. § 2G1.3; AND BECAUSE HIS LIFE HISTORY AND THE CIRCUMSTANCES SURROUNDING THIS CASE QUALIFY AS ABERRANT BEHAVIOR PURSUANT TO U.S.S.G. § 5K2.20**

In addition to the arguments made above under the rubric of section 3553, Mr. Rowell asks this court to grant variances on the following grounds: (1) outside the heartland; and (2) Aberrant Behavior, U.S.S.G. § 5K2.20. Post-*Booker* case law has not defined standards to apply when considering variances. Sentences that are outside the Guideline range are no longer called departures, but are now referred to as "variances." The most recent pronouncement from the Tenth Circuit Court of Appeals still allows for imposition of sentences below the presumptive Guideline range as long as the sentence is "reasonable." *United States v. Cage*, 451 F.3d 585, 590-91(10th Cir. 2006); *see United States v. Kristi*, 437 F.3d 1050, 1054-55 (10th Cir. 2006). In *United States v. Vanleer*, 270 F.Supp.2d 1318 (D. Utah 2003), this court conducted a critical analysis of downward departures after the passage of the so-called Feeney Amendments which, in certain cases, sought to legislatively limit federal judges' sentencing discretion. As this court

noted, however, departure motions in most cases would be handled the same as before passage of the amendment.[1] *See Cage*, at 590 n.2.[2]

A. <u>Heartland Variance</u>

"The Sentencing Guidelines provide that each guideline carves out a 'heartland,' 'a set of typical cases embodying the conduct that each guideline describes.'" *United States v. Sicken,* 223 F.3d 1169 (10th Cir. 2000) (quoting U.S.S.G. ch. 1, pt. A, subpt. 4(b)). The first step "in deciding whether a departure is appropriate is to determine the 'heartland' of a particular guideline." *Id*. at 1173. In this case the applicable Guideline is § 2G1.3.

---

[1] The *Vanleer* opinion was written post- *Feeney*, but pre-*Booker*. In the post-*Booker* world, where the Guidelines are advisory, it seems that federal departure decisions should be governed by a Koon-type analysis which asks whether the case is outside the heartland or unusual, and whether the particular reason for departure is forbidden, encouraged, or discouraged. In any event, this court has expressed the importance of departures in appropriate cases:

> Departures-both downward and upward-are a critical component of the sentencing guideline scheme. Departures provide flexibility to what would otherwise be an unduly rigid system. Indeed, without departures to avoid unduly lenient or unduly excessive punishment, it seems likely that popular support for sentencing guidelines would quickly erode. Presumably for this very reason Congress directed that the sentencing guidelines should be crafted (and presumably interpreted) so as to "avoid[ ] unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices. . . ." *Vanleer*, at 1320 (citations omitted).

[2] It is unclear in footnote #2, when the court uses the term "variance," whether that means variance or departure based solely on the section 3553 factors or whether the term variance also includes traditional downward departures under chapter 5 of the Guidelines. In another recent case, the Tenth Circuit simply noted that the defendant argued for a downward departure but mentioned nothing about the weight or standards that apply to downward departure arguments. *United States v, Chavez-Diaz*, 444 F.3d 1223 (10th Cir. 2006).

It appears that there is no historic record or case law defining a heartland under §2G1.3. However, the case law found does not reflect a conviction for 18 U.S.C. §2425. *See U.S. v. Meyers*, 481 F.3d 1107 (8th Cir. 2007) (conviction under 18 U.S.C. § 2423(a) for interstate transportation of a minor with intent to engage in sexual activity); *U.S. v. Madison*, 477 F.3d 1312 (11th Cir. 2007) (conviction under 18 U.S.C. §§ 1591(a)(2), 2423(e) for sex trafficking of children and conspiracy to transport minors for the purpose of prostitution); *U.S. v. Bohannon,* 476 F.3d 1246 (11th Cir. 2007) (conviction under 18 U.S.C. § 2422(b) for use of the internet to transport minor into sexual activity); *U.S. v. Castellon*, 213 Fed. Appx. 732 (10th Cir. 2007) (conviction under 18 U.S.C. § 2423(c) for engaging in illicit sexual conduct in foreign commerce); *U.S. v. Giordano,* 324 F.Supp.2d 349 (D.Conn. 2003) (conviction under 18 U.S.C. § 2425 where defendant and co-conspirators arranged for sexual liaisons with minor victims on numerous occasions).

Based on the case law reflected under §2G1.3, Mr. Rowell's case is atypical, "one to which a particular guideline linguistically applies but where conduct significantly differs from the norm." *Sicken*, 223 F.3d at 1172. The more common scenario is a conspiracy to engage in sex trafficking or interstate transportation of minors including several communications involving the planning and execution of the conspiracy. Mr. Rowell did not engage in a conspiracy. There were only a few communications, not several communications between Mr. Rowell and the undercover agent. And there was only one agreed upon meeting arranged between Mr. Rowell and the undercover agent over a sixth month period. The "heartland" of cases under §2G1.3 does not include a conviction for Use of Interstate Facilities to Transport Information About a Minor pursuant to 18 U.S.C. §2425, or behavior similar to this case. Therefore, Mr. Rowell qualifies

9

for a variance because his case fall outside of the "heartland" of defendants convicted and sentenced pursuant to §2G1.3.

    B. Aberrant Behavior

The United States Sentencing Commission recognizes that the aberrant behavior exception may apply in an exceptional case if:

> (1) the defendant's criminal conduct meets the requirements of subsection (b); and (2) the departure is not prohibited under subsection (c).
>
> (B). . . the defendant committed a single criminal occurrence that (1) was committed without significant planning; (2) was of limited duration; and (3) represent a marked deviation by the defendant from an otherwise law-abiding life.

U.S.S.G. § 5K2.20(a)(b).

In this case, Mr. Rowell's life history demonstrates that this criminal offense was a marked deviation from an otherwise law abiding life. There was no significant planning. Although the contact period is between February and July there were only a few conversations, thus the contact was of limited duration. And this is a marked deviation from Mr. Rowell's otherwise law abiding life. He was one previous conviction for issuing a bad check, which he subsequently paid full restitution. He has a supportive family and a solid work history. He provides financial support for his daughter and is involved in her life. Mr. Rowell meets the criteria for a variance under the aberrant behavior Guideline.

## CONCLUSION

Based upon the foregoing, this court has discretion to reduce Mr. Rowell's sentence an additional amount based on the section 3553 factors, and by applying the variances outlined above. Given the totality of circumstances, a further reduction of 4 to 6 levels would be

reasonable. Such a sentence would reflect the seriousness of the crime, provide just punishment, plus acknowledge the mitigating circumstances described above.

DATED this  6th  day of June, 2007.

      /s/ Loni F. DeLand
      Loni F. DeLand
      Attorney for Defendant

### CERTIFICATE OF SERVICE

I hereby certify on June 6, 2007, I electronically filed the foregoing SENTENCING MEMORANDUM with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Karen Fojtik
Assistant United States Attorney
185 South State Street, Suite 300
Salt Lake City, Utah 84111

      /s/ Heather M. Stokes